IN THE U.S. DISTRICT COURT FOR THE
WESTERN DISTRICT OF ARKANSAS

| | |
|---|---|
| STANLEY ROGERS, ) | |
| ) | |
| Plaintiff, ) | Case No. 5:22-cv-05012-PKH |
| ) | |
| v. ) | |
| ) | |
| FISERV, INC., et al, ) | |
| ) | |
| Defendants. ) | |

**PLAINTIFF STANLEY ROGERS' RESPONSE IN
OPPOSITION TO DEFENDANTS' MOTION TO DISMISS**

Plaintiff, Stanley Rogers ("Rogers" or "Plaintiff"), submits his response to Defendants Tony Marino and Angelo Grecco's (collectively "Defendants") Motion to Dismiss ("Defendants' Motion" or "the Motion"). The Court should deny Defendants' Motion in its entirety for the reasons stated herein and this case should proceed as filed.

**ARGUMENTS AND AUTHORITIES**

**I.     Introduction**

Rogers' claims arose because of Defendants' intentional and unlawful efforts to fraudulently induce Rogers to execute a Release of Claims and tortuously interfere with Rogers' business expectancy in gaining alternate employment in the state of Arkansas.  Defendants' conduct that gave rise to these claims was directed at, and had its primary effect in, the state of Arkansas.  As demonstrated below, the Court may exercise specific jurisdiction over the Defendants due to the relationship between the claims asserted and Defendants' contacts with the forum state.

1

## II.     Legal Standard

In their Motion, Defendants request the Court to dismiss Rogers' claims for lack of personal jurisdiction pursuant to Rule 12(b)(2) of the Federal Rules of Civil Procedure. "To defeat a Rule 12(b)(2) motion, a plaintiff must make a *prima facie* showing of jurisdiction. This *prima facie* showing must be tested, not by the complaint alone, but by the affidavits and exhibits presented with the motion to dismiss and in opposition thereto." *Biddle v. Bradshaw*, No. 6:19-CV-6007, 2019 WL 2503965, at *3 (W.D. Ark. June 17, 2019) (internal citations omitted) (emphasis in original). Unless the court holds a hearing on personal jurisdiction, "the court must view the facts in the light most favorable to the nonmoving party." *Id.*  Further, while "[p]laintiffs ultimately bear the burden of proof on the issue, personal jurisdiction **does not have to be proven by a preponderance of the evidence** until trial or an evidentiary hearing." *Id.* (emphasis added).

"When the defendant is not a resident of the forum state, the district court may only exercise jurisdiction if 'personal jurisdiction exists under the forum state's long-arm statute and . . . the exercise of personal jurisdiction is consistent with due process.'" *Esposito v. Airbnb Action, LLC*, No. 5:20-CV-5204, 2021 WL 411140, at *2 (W.D. Ark. Feb. 5, 2021) (quoting *Wells Dairy, Inc. v. Food Movers Int'l, Inc.*, 607 F.3d 515, 518 (8th Cir. 2010)). In Arkansas, "the exercise of personal jurisdiction is limited only by federal constitutional law." *Id.* (quoting *Yanmar Co., Ltd. v. Slater*, 386 S.W.3d 439, 443 (Ark. 2012)). Constitutional due process requires non-resident defendants to "have minimum contacts with the forum state such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice." *Id.* (internal citations omitted). The defendant's "conduct and connection with the forum state

must be such that the defendant could reasonably anticipate being haled into court there." *Whaley v. Esebag*, 946 F.3d 447, 451 (8th Cir. 2020) (internal citations omitted). To determine if a Court has specific jurisdiction over a defendant, it "consider[s] whether the defendant has **'purposely directed his activities at residents of the forum, and the litigation results from alleged injuries that arise out of or relate to those activities.'**" *Id.* (quoting *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 472, 105 S.Ct. 2174, 85 L.Ed.2d 528 (1985)) (emphasis added).

In the present case, Rogers asserts claims of fraud and tortious interference with a business expectancy—both intentional torts. *See* Pet. [Doc. No. 3].

> Because plaintiff's claims sound in intentional tort, [courts] evaluate specific jurisdiction using the 'effects test' set forth in *Calder v. Jones*, 465 U.S. 783, 104 S. Ct. 1482, 79 L.Ed.2d 804 (1984). In *Calder*, personal jurisdiction was established where the nonresident defendant committed a tort and the associated harm was felt primarily within the forum state.

*Id.* "[T]he Supreme Court has since narrowed its holding in *Calder*, highlighting 'two related aspects' of the defendant's relationship with the forum that must be present to establish minimum contacts." *Id.* (citing *Walden v. Fiore*, 571 U.S. 277, 284, 134 S. Ct. 1115, 188 L.Ed.2d 12 (2014)). In *Walden*, the Court explained, "[f]irst, the relationship must arise out of contact that the defendant himself created with the forum state. Second, [the Court] look[s] to the defendant's contacts and conduct with the forum state *itself*, not the defendant's contacts with persons who reside there." *Id.* (internal quotation marks and citations omitted).

In addition to the "effects test," courts also assess minimum contacts using the following five-factor test: "(1) the nature and quality of contacts with the forum state; (2) the quantity of such contacts; (3) the relation of the cause of action to the contacts; (4) the interest of the forum

3

state in providing a forum for its residents; and (5) convenience of the parties."[1] *Whaley,* 946 F.3d at 452. As shown below, the Court's exercise of personal jurisdiction over Defendants is clearly appropriate based on the application of both the effects test and five-factor minimum contacts test.

### III. Defendants' Contacts with Arkansas are Sufficient to Establish Specific Jurisdiction Under Both the Effects Test and the Five-Factor Minimum Contacts Tests.

Defendants purposely directed their activities at Rogers, who is a life-long resident of Arkansas and was located in Arkansas at the time of Defendants' activities, and the present litigation results from injuries that arise out of those activities. *See* Pet. [Doc. No. 3]. Defendants' contacts satisfy both tests used to evaluate personal jurisdiction.

#### A. Defendants' Conduct Satisfies the Effects Test.

The first factor under the "effects test" contemplates whether the relationship arose "out of contact that the defendant *himself* created with the forum state." *Walden v. Fiore*, 571 U.S. 277, 284, 134 S. Ct. 1115, 1122, 188 L. Ed. 2d 12 (2014). In the current dispute, Grecco facilitated and fostered his contacts with Arkansas, the forum state. Grecco admits in his affidavit, "I periodically communicated with Mr. Rogers about obtaining a waiver via text message and email between **September 23, 2021 and November 25, 2021**. I also spoke to Mr. Rogers via telephone **at least once** regarding a potential waiver of his non-compete obligations." *See* Grecco Aff. [Doc. No. 12-2], ¶ 9 (emphasis added). Thus, Grecco directed active communications to Rogers in Arkansas for over two months regarding the very subject matter at issue. *See id.*; Pet. [Doc. No. 3], ¶ 1 (stating Plaintiff resides in Arkansas, demonstrating Grecco

---

[1] Courts should assign more weight to the first three factors. *Whaley,* 946 F.3d at 452.

directed his communications to the forum state). And, importantly, it was these particular contacts that gave rise to Plaintiff's claims. *See* Pet. [Doc. No. 3], ¶¶ 20-33.

Likewise, Marino admits he "received a text message from Samir Zabaneh asking whether Fiserv would waive Rogers' non-compete agreement," to which he responded "that Fiserv would not waive Rogers' non-compete obligations." *See* Marino Aff. [Doc. No. 12-1], ¶ 10.  He engaged in conduct intended to facilitate an outcome in Arkansas—the tortious interference of Plaintiff's business expectancy.  Moreover, Marino's conduct was the final act in Defendants' scheme to fraudulently induce Plaintiff to execute the Release of Claims.  They promised to provide him a waiver if he executed the Release of Claims, and once Plaintiff did so, Marino expressly refused to provide the waiver.  *See* Pet. [Doc. No. 3], ¶¶ 20-33. Accordingly, Defendants acted in concert to create contacts with Arkansas, and that had their effect in Arkansas, related to the claims in this case.

The second factor "looks to the defendant's contacts with the forum State itself, not the defendant's contacts with the persons who reside there." *Walden*, 571 U.S. 277, 285, 134 S. Ct. 1115, 1122, 188 L. Ed. 2d 12 (2014). The Supreme Court has upheld "the assertion of jurisdiction [under the second factor] over defendants who have purposely 'reached out beyond' their State and into another by, for example, entering a contractual relationship . . ." *Id.* (citing *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 480, 105 S. Ct. 2174, 2186, 85 L. Ed. 2d 528 (1985)). Although Defendants did not *enter* a contractual relationship in the forum state, they certainly *interfered* with one. Rogers' employment with the Subsequent Employer was contingent on Fiserv providing written consent that it would not seek to enforce restrictive covenants contained in Rogers' RSU Agreements. *See* Pet. [Doc. No. 3], ¶¶ 19-20.

Notwithstanding Grecco's fraudulent representations and assurances to Rogers that Fiserv would provide the written consent, Fiserv, through Marino, failed to provide such consent. Grecco and Marino's combined conduct perpetuated a fraud and tortuously interfered with Rogers' ability to enter a new employment contract to work in Arkansas. Such conduct satisfies the second factor of the effects test set forth in *Calder*.

Because Defendants' conduct in this case was directed at and had its tortious effect in Arkansas, this Court's exercise of personal jurisdiction over Defendants is proper under the *Calder* effects test.

### B.  Defendants' Conduct Satisfies the Five-Factor Minimum Contacts Test.

Application of the five-factor minimum contacts test also supports the Court's exercise of personal jurisdiction over Defendants. The first factor considers "the nature and quality of contacts with the forum state." *Whaley,* 946 F.3d at 452. Defendants' unlawful contacts with the forum state were primarily virtual, *i.e.*, via text, email, and over the phone, but the quality of the contacts was sufficient to fraudulently induce Rogers into entering the Release of Claims and interfere with Rogers' ability to work for the Subsequent Employer. *See* Pet. [Doc. No. 3], ¶¶ 20-33. Significantly, the Eighth Circuit has emphasized, "[t]o be sure, calls, emails, and texts messages directed at plaintiff can be relevant contacts." *Morningside Church, Inc. v. Rutledge*, 9 F.4th 615, 620 (8th Cir. 2021); *see also ABL-USA Enterprises, Inc. v. Hawk Aviation, Ltd.,* 15 F. Supp. 2d 1297, 1300 (S.D. Fla. 1998) (The Florida District Court exercised personal jurisdiction over non-residents because their phone calls were used to commit a tort against a resident of the forum state).

In other words, the Eighth Circuit has rejected Defendants' argument that their electronic communications are insufficient to establish minimum contacts. In today's world, especially

during a global pandemic, it is exceedingly common for interactions to be conducted virtually through electronic communication, which was certainly the case here. If Defendants are allowed to avoid personal jurisdiction based on their misconduct being done electronically, it would encourage other potential tortfeasors to engage in similar misconduct and, thus, never be held accountable in the forum to which their actions were directed. The Court should not permit Defendants to set such a precedent.

Factor two, "the quantity of such contacts," is also satisfied in the present case. *Whaley,* 946 F.3d at 452. Grecco exchanged multiple texts and emails with Rogers over the course of more than two months. *See* Grecco Aff. [Doc. 12-2], ¶ 9. Although Marino had less-frequent contact with the forum state, his text exchange communicating denial of written consent is particularly important to the present suit. *See* Marino Aff. [Doc. 12-1], ¶ 10; *See* Pet. [Doc. No. 3], ¶¶ 20-33. His conduct was the final blow in Defendants' fraudulent and tortious interference scheme. Defendants' consistent contact for months to perpetuate a fraud and tortiously interfere with Rogers' business expectancy is a sufficient quantity of contacts to satisfy this factor.

Defendants' conduct also supports factor three, "the relation of the cause of action to the contacts." *Whaley,* 946 F.3d at 452. Rogers' claims of fraud and tortious interference are directly related to Defendants' contacts with the forum state. Grecco represented to Rogers that Fiserv would provide the written consent in order to fraudulently induce Rogers to execute the Release of Claims. Defendants, through Marino, then refused to provide that consent and threatened the Subsequent Employer to not hire Rogers in Arkansas. *See* Pet. [Doc. No. 3], ¶¶ 20-33. Defendants' conduct undeniably prompted the present litigation and supports both of Rogers' claims for fraud and tortious interference with a business expectancy.

Factors four and five, "the interest of the forum state in providing a forum for its residents" and "convenience of the parties" weigh less than the first three, but still support the Court's exercise of personal jurisdiction over Defendants. *Whaley,* 946 F.3d at 452. The Court has an interest in its residents' ability to gain lawful employment, and, while Defendants do not reside in the forum state, their employer, Defendant Fiserv, conducts significant business in the State of Arkansas. Walmart is the employer's single largest client which, as the Court well knows, is headquartered in Arkansas.

It is true, the Eighth Circuit has declined to exercise personal jurisdiction over "isolated connections" that are "random, fortuitous, and attenuated." *Viasystems, Inc. v. EBM-Papst St. Georgen GmbH & Co., KG*, 646 F.3d 589, 594 (8th Cir. 2011). For example, in *Viasystems, Inc.*, defendant sent "scattered e-mails, phone calls, and a wire-transfer of money," which did not "constitute a 'deliberate' and 'substantial connection' with the state." *Id.* Defendants' contacts in the present litigation were the opposite of those in *Viasystems*. Defendants' contacts were not random, they were calculated and consistently occurred over two months while Rogers was actively seeking alternate employment. Defendants' contacts were not fortuitous. Grecco and Marino deliberately interfered with Rogers' expectations and ability to work for a subsequent employer, all after representing that they would, in fact, grant such a waiver as part of their scheme to gain Rogers' signed release. Rogers reported directly to Grecco and had communication with Grecco on a weekly, if not daily, basis for the majority of 2020 and 2021. Last, Defendants' contacts were not attenuated. Grecco and Marino's contacts with the forum state *actually* prevented Rogers from accepting alternate employment.

Despite Defendants' lack of physical presence in the forum state,[2] Defendants purposely directed their activities at a resident of the forum state, Rogers, and the present litigation resulted from an injury that arose out of those activities—*i.e.*, Rogers being the victim of a fraud and his inability to accept an excellent position with a prospective employer. Accordingly, Defendants' contacts are certainly sufficient to satisfy the applicable minimum contact tests, and personal jurisdiction is appropriate given Defendants' direct contribution to the present suit.

## CONCLUSION

For all the foregoing reasons, Rogers respectfully requests that the Court deny Defendants' Motion to Dismiss and allow him to pursue his claims against all named Defendants.

Respectfully Submitted,

/s/ W. Kirk Turner
W. Kirk Turner, OBA #13791
Arkansas Bar No. 2006024
MCAFEE & TAFT
Two West Second Street, Suite 1100
Tulsa, Oklahoma 74103
Telephone: (918) 587-0000
Facsimile: (918) 599-9317
kirk.turner@mcafeetaft.com

**ATTORNEY FOR PLAINTIFF**

---

[2] A non-resident's physical presence is **not required** to establish personal jurisdiction. *Walden v. Fiore*, 571 U.S. 277, 283, 134 S. Ct. 1115, 1121, 188 L. Ed. 2d 12 (2014) ("Although a nonresident's physical presence within the territorial jurisdiction of the court is not required, the nonresident generally must have certain minimum contacts . . . .").

## CERTIFICATE OF SERVICE

☒  I hereby certify that on ___February 3, 2022___, I electronically transmitted the foregoing document to the Clerk of Court using the ECF System for filing and transmittal of a Notice of Electronic Filing to the following ECF registrants:

Kerri E. Kobbeman, Esq.

☒  I hereby certify that on February 3, 2022, I served the foregoing document by electronic mail on the following, who are not registered participants of the ECF System:

Gary B. Eidelman, Esq.
gary.eidelman@saul.com

Garrett P. Buttrey, Esq.
garrett.buttrey@saul.com

/s/ W. Kirk Turner
W. Kirk Turner